UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BERNIE RUIZ,

Plaintiff,

v.

M. VILORIO; M. ALVAREZ,

Defendants.

Case No. 26-cv-3624-BAS-BJW

**ORDER:**

1. **GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; AND**
2. **DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiff Bernie Ruiz, a state prisoner proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983, accompanied by a Motion to Proceed In Forma Pauperis ("IFP"). (ECF Nos. 1-2.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.00, consisting of a $350.00 statutory fee plus an additional administrative fee of $55, although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee

Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1)&(4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1)&(2); *Bruce*, 577 U.S. at 84.

In support of his IFP motion, Plaintiff has submitted a copy of his inmate trust account statement attested to by a trust account official. (ECF No. 3 at 4.) The document shows he had an average monthly balance of $239.46 and average monthly deposits of $233.57, with an available balance of $0.42. (*Id.*) The Court **GRANTS** Plaintiff's motion to proceed IFP and assesses an initial partial filing fee of $47.89. However, *this initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed*. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Pursuant to 28 U.S.C. § 1915(b)(2), the agency having custody of Plaintiff will forward payments to the Clerk pursuant to the installment provisions of 28 U.S.C. § 1915(b)(1)&(2) until the $350.00 statutory fee is paid in full.

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the Complaint

Plaintiff alleges that on February 5, 2026, Defendants AIU Squad Investigator Correctional Officers Vilorio and Alvarez, "without advancing any legitimate penological correctional goals," came to his cell, placed him and his cellmate in handcuffs, searched their cell and found no contraband. (ECF No. 1 at 6.) Plaintiff was sitting on his walker in

the B section of the dayroom in handcuffs when Vilorio and Alvarez erected a privacy partition around him to block "the security cameras from reviewing and recording their malfeasance conduct." (*Id.* at 7-8.) They lifted him up to his tiptoes "in what is known as the duck walk position" by placing their arms under his arms "with an unnecessary amount of excessive force," causing "pain and discomfort and bruises on Plaintiff's right arm." (*Id.*) They moved him to the A section of the dayroom and ordered him to strip naked. (*Id.* at 8.) Without a privacy partition and in full view of prisoners and others in the open, in-progress dayroom, Vilorio and Alvarez strip searched Plaintiff, "laughing and commenting on the size of his penis and contending that Plaintiff had something coming out of his rectum when forced to bend over spread his butt cheeks in the dayroom in front of others." (*Id.*) Plaintiff claims that the intentional infliction of physical, emotional and mental pain and discomfort was malicious and sadistic and inflicted in retaliation for not having found contraband during the cell search. (*Id.* at 9.)

On March 25, 2026, Vilorio, Alvarez and several other AIU squad K-9 officers, "in retaliation for exercising Plaintiff's protected conduct," came to Plaintiff's cell where he and his cellmate were strip searched in the cell in view of each other. (*Id.* at 10.) After the search resulted in negative results, the officers "damaged personal property and legal papers were put all over the floor during the search and water was all over the legal papers." (*Id.*) Plaintiff was then x-rayed and still no contraband was found. (*Id.*) Plaintiff claims Vilorio and Alvarez violated the Eighth Amendment when they humiliated him and used excessive force without a penological justification and violated the First Amendment by retaliating against him and denying him access to the courts. (*Id.* at 9-10.)

## C. Discussion

### 1. *Retaliation Claim*

Plaintiff claims the searches were conducted "in retaliation for exercising Plaintiff's protected conduct," but without identifying that conduct. (ECF No. 1 at 10-11.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted). Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff has not plausibly alleged any Defendant took an adverse action against him because of any protected conduct, as he has not identified any protected conduct he engaged in or of which Defendants were aware. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (noting that the plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act). Neither has he set forth any facts supporting his conclusory allegation that the searches were not reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott*, 490 U.S. 401, 411–12 (1989) (discussing that the prevention and detection of contraband is a legitimate penological objective); *Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (stating that visual body-cavity inspections serve "significant and legitimate security interests of the institution."); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim.).

Plaintiff's First Amendment retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

2. *Eighth Amendment Claim*

Plaintiff claims Defendants violated the Eighth Amendment by using "undue unnecessary excessive force" causing "pain and discomfort and bruises on Plaintiff's right arm" when they lifted him and duck-walked him, and by inflicting mental and emotional distress in the humiliating manner in which the strip search was conducted. (ECF No. 1 at 7-8.) "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights. *Id.,* quoting *Wilson*, 501 U.S. at 302–03. An objectively serious deprivation is a denial of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996), quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). De minimis uses of physical force do not violate the constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley v. Albers*, 475 U.S. 312, 327 (1986), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The allegations that Defendants left a bruise on Plaintiff's arm when lifting or moving him and that he suffered pain and discomfort fail to plausibly allege Defendants used more than de minimis force or that they used it maliciously or sadistically rather than in a good faith effort to lift and move him. *Id*. Plaintiff's conclusory allegations that Defendants acted "without having advanced any legitimate penological correctional goals" and "with an unnecessary amount of excessive force" (ECF No. 1 at 7-8), are insufficient to plausibly allege these elements of an Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim.).

The comments allegedly made during the search do not plausibly allege an Eighth Amendment violation. *See Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")

Plaintiff's Eighth Amendment claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

3. *Fourth and Fourteenth Amendment Privacy and Search Claims*

To the extent Plaintiff claims the searches were intended to harass and humiliate him, particularly the strip search conducted in view of everyone in the dayroom, he has not stated a claim. (ECF No. 1 at 8.) The Fourth Amendment protects against unreasonable searches, "and its protections are not extinguished upon incarceration." *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993), citing *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988) (noting that prisoners retain a limited right to bodily privacy which was not violated by routine body cavity searches when leaving or returning to their housing unit). "[T]he Fourteenth Amendment protects . . . the most basic subject of privacy . . . the naked body." *Vazquez v. County of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020) (quotation marks omitted). A Fourteenth Amendment bodily privacy claim "largely mirrors" a Fourth Amendment analysis. *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017).

Strip searches of prisoners are constitutional if they are reasonable. *See Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010). Strip-search procedures are not reasonable if they are abusive, vindictive, harassing, or unrelated to any legitimate penological interest. *Michenfelder*, 860 F.2d at 332 (discussing that strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional), citing *Wolfish*, 441 U.S. at 559. However, "restrictions on inmates' privacy interests are justified to the extent that they are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The prevention of contraband is a legitimate penological objective, *see Thornburgh*, 490 U.S. at 411–12, and is one that strip searches serve. *Wolfish*, 441 U.S. at 560. Whether a search is reasonable under the Fourth Amendment requires a case-by-case balancing of the need for the particular search against the invasion of personal rights that the search entails, and courts

are required to consider such factors as (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted. *Byrd v. Maricopa County Sheriff's Dept.*, 629 F.3d 1135, 1141 (9th Cir. 2011) (en banc).

Plaintiff's Complaint, as drafted, does not indicate why he was moved from behind the privacy partition before he was searched, and does not plausibly allege he could have been searched behind the partition before he was moved to the dayroom, nor does the Complaint contain anything other than wholly conclusory allegations that the search did not advance a legitimate penological interest, and therefore fails to state a Fourth or Fourteenth Amendment claim. *Id.*; *see also Iqbal,* 556 U.S. at 678 (stating that a complaint is subject to dismissal for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and the "mere possibility of misconduct" falls short of meeting the plausibility standard).

Plaintiff's Fourth and Fourteenth Amendment unreasonable search and invasion of privacy claims are dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

4. *Access to Courts Claim*

Plaintiff alleges that the scattering of his legal papers on the wet floor of his cell interfered with his access to courts. (ECF No. 1 at 10-11.) Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). A prisoner must allege facts showing actual injury arising from interference with legal materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim, and the nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 413–14, 417 (2002). Plaintiff has not alleged the loss of a claim as a result of his legal papers becoming wet, or for any other reason, and has therefore failed to state an access to courts claim.

The access to courts claim is dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**D. Leave to Amend**

Because Plaintiff is proceeding pro se, the Court grants leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

## III. Conclusion and Orders

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

2. **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $47.89 initial filing fee as well as the remaining $302.11 balance of the $350.00 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). *The initial fee need be collected only if sufficient funds are available in Plaintiff's account at the time this Order is executed.*

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1) and **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted; specifically, on or before **September 14, 2026**. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1;

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment.** *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

**DATED: July 31, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**