UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BERNIE RUIZ,
CDCR #BI-4052,

Plaintiff,

vs.

M. VILORIO; M. ALVAREZ,

Defendants.

Case No.: 26-cv-3624-BAS-BJW

**ORDER:**

**(1) DISMISSING PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM WITHOUT FURTHER LEAVE TO AMEND, and**

**(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SUMMONS AND FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3)**

On June 17, 2026, Plaintiff Bernie Ruiz, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, accompanied by a Motion to Proceed In Forma Pauperis ("IFP"). (ECF Nos. 1–2.) On July 31, 2026, the Court granted Plaintiff leave to proceed IFP and dismissed his complaint for failure to state a claim with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). (ECF No. 4.) Plaintiff has now filed a First Amended Complaint ("FAC"). (ECF No. 5.)

## I. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (citing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (citing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The primary vehicle for redressing violations of federal constitutional or statutory rights committed by individuals acting under color of state law is 42 U.S.C. § 1983. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citation omitted).

### B. Allegations in the FAC

On February 5, 2026, Plaintiff and his cellmate were in their cell while dayroom was in progress when Defendants AIU Squad Investigator Correctional Officers Vilorio and Alvarez ordered their cell door opened and placed both inmates in restraints. (ECF No. 5

at 7.) Plaintiff, using a walker, was moved to the B section of the housing unit while his cellmate was moved to the A section. (*Id.*) A search of their cell had negative results for contraband and Plaintiff's cellmate was returned to their cell. (*Id.*) Defendants then approached Plaintiff, who was sitting on his walker with his hands handcuffed behind his back. (*Id.*) Vilorio grabbed Plaintiff's hands, "pulled on his thumbs bending them back, causing extreme undue pain and discomfort," while Alvarez watched without intervening. (*Id.* at 8.) While shielded from the video monitor cameras by a partition taken from a shower, Vilorio removed and replaced a handcuff that was too tight. (*Id.*) Both Defendants then grabbed Plaintiff and "started twisting his arms, while not [posing] a threat [or] resisting . . . as they pulled Plaintiff up from his ADA walker, without giving any orders for Plaintiff to get up or follow." (*Id.*) Defendants then "started to punch Plaintiff in his sides, shoulders, back and neck to inflict unnecessary and wanton infliction of undue pain and discomfort." (*Id.*) They then each grabbed an arm and a shoulder with extreme pressure and lifted Plaintiff up to his tiptoes. (*Id.* at 8–9.) When he complained of pain, they placed him back on his walker. (*Id.*)

Defendants moved Plaintiff to the A section of the dayroom but did not bring the privacy partition and ordered him to take off all his clothes. (*Id.* at 10.) As he was undressing in the open dayroom with other inmates watching, Vilorio and Alvarez "started making fun of the size of Plaintiff's penis." (*Id.*) They ordered him to bend over and expose himself in front of the other inmates present. (*Id.* at 11.) Defendants then made obscene comments about Plaintiff's body. (*Id.*) He was then ordered to return to his cell where he immediately filed a staff malfeasance complaint against Vilorio and Alvarez. (*Id.*) On March 25, 2026, in retaliation for filing the grievance, Defendants and several AIU squad K-9 dogs came to Plaintiff's cell to conduct another search during which, like the original search, no contraband was found. (*Id.* at 11–12.)

Plaintiff claims Vilorio and Alvarez violated the Eighth Amendment when they used excessive force without a penological justification and violated the First Amendment by retaliating against him. (*Id.* at 13.)

**C. Discussion**

1. *Eighth Amendment Claim*

Plaintiff claims Defendants Vilorio and Alvarez violated the Eighth Amendment by using unnecessary and excessive force causing pain and discomfort. (ECF No. 5 at 7-11.) "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to" his constitutional rights. *See id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). An objectively serious deprivation is a denial of "the minimal civilized measures of life's necessities." *See Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). De minimis uses of physical force do not violate the Constitution provided that the use of force is not of a sort "repugnant to the conscience of mankind." *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The allegations that Defendants "punch[ed] Plaintiff in his sides, shoulders, back and neck to inflict unnecessary and wanton infliction of undue pain and discomfort," bent his thumbs behind his back, and that they each grabbed an arm and a shoulder with extreme pressure and lifted Plaintiff up to his tiptoes, (ECF No. 5 at 8–9), all for no purpose while Plaintiff was not resisting, plausibly allege an Eighth Amendment excessive force claim. *See Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 327; *Estelle*, 429 U.S. at 106. These allegations are sufficient to survive the low threshold of passing screening. *See Watison*, 668 F.3d at 1112. Plaintiff is entitled to have the U.S. Marshal effect service of the

summons and FAC against Defendants Vilorio and Alvarez. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.")

2. *Fourth and Fourteenth Amendment Privacy and Search Claims*

Plaintiff claims the strip search was intended to harass and humiliate him because it was unnecessarily conducted in front of other inmates in the dayroom with no privacy partition, Defendants made "fun of the size of Plaintiff's penis," and then ordered him to bend over and expose himself while commenting that he "had something hanging out of his rectum and started laughing again causing him undue emotional harm and mental anguish." (ECF No. 5 at 10–11.) The Court liberally construes these allegations as attempting to state an unreasonable search claim under the Fourth and Fourteenth Amendments. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that when a plaintiff appears pro se, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt with respect to what claims are raised); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (noting that the rule of liberal construction is "particularly important" in civil rights cases).

The Fourth Amendment protects against unreasonable searches "and its protections are not extinguished upon incarceration." *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993) (citing *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). "The Fourteenth Amendment protects . . . the most basic subject of privacy . . . the naked body." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1165 (9th Cir. 2020) (citation modified). A Fourteenth Amendment bodily privacy claim "largely mirrors" a Fourth Amendment analysis. *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017).

Strip searches of prisoners are constitutional if they are reasonable. *See Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010). Strip-search procedures are not reasonable if they are "excessive, vindictive, harassing, or unrelated to any legitimate penological

interest." *See Michenfelder*, 860 F.2d at 332 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Whether a search is reasonable under the Fourth Amendment requires a case-by-case balancing of the need for the particular search against the invasion of personal rights that the search entails, and courts are required to consider such factors as (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted. *Byrd v. Maricopa Cnty. Sheriff's Dept.*, 629 F.3d 1135, 1141 (9th Cir. 2011) (citation modified).

The FAC plausibly alleges that the public humiliation which resulted from the unnecessary removal of the privacy screen and Defendants' abusive and harassing comments violated Plaintiff's Fourth and Fourteenth Amendment rights against unreasonable searches. *See id.*; *see also Michenfelder*, 860 F.2d at 332. The allegations are sufficient to survive the "low threshold" of passing screening and Plaintiff is entitled to have the U.S. Marshal effect service of the summons and FAC against Defendants Vilorio and Alvarez.

*3. First Amendment Retaliation Claim*

Finally, Plaintiff claims the second search was conducted in retaliation for filing a staff malfeasance complaint where he reported Defendants' alleged excessive force and humiliating strip search. (ECF No. 5 at 11–13.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *See Watison*, 668 F.3d at 1114.

The Court found in its prior dismissal order that Plaintiff had not plausibly alleged any Defendant took an adverse action against him because of any protected conduct. (*See* ECF No. 4 at 5) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.

1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act).) The Court also previously found Plaintiff had failed to set forth any facts supporting his conclusory allegation that the second search was not reasonably related to a legitimate penological interest. (*Id.*) Plaintiff has not cured those pleading defects, as there are once again no factual allegations that the search was motivated by or related to the filing of his misconduct complaint. *See Rhodes*, 408 F.3d at 567 (stating a plaintiff must allege adverse action was taken "because of" his protected conduct); *see also Iqbal,* 556 U.S. at 678–79 (holding that the "mere possibility of misconduct" or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" fall short of the plausibility standard for pleading a § 1983 claim).

Plaintiff's First Amendment retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim. Because it is now clear Plaintiff is unable to amend to state a First Amendment retaliation claim, the claim is dismissed without further leave to amend. *See United States ex rel. Insoon Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) ("Futility of amendment can, by itself, justify the denial of . . . leave to amend.").

## II. Conclusion and Orders

Based on the foregoing, the Court:

1. **DISMISSES** the First Amendment retaliation claim in the First Amended Complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) without further leave to amend. This action will proceed against Defendants Vilorio and Alvarez only as to the Eighth Amendment excessive force claim and the Fourth and Fourteenth Amendment unreasonable search claim in the First Amended Complaint.

2. **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint (ECF No. 5) for Defendants Vilorio and Alvarez and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for these Defendants. The Clerk will provide Plaintiff with certified copies of his First Amended Complaint and the summons so that he may

serve the Defendants. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the U.S. Marshal Form 285 as completely and accurately as possible, *include an address where Defendants may be found and/or subject to service* pursuant to S.D. Cal. Civ. L.R. 4.1(c), and return the form to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

3. **ORDERS** the U.S. Marshal to serve a copy of the First Amended Complaint and summons upon Defendants Vilorio and Alvarez as directed by Plaintiff on the U.S. Marshal Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Defendants, once served, to reply to Plaintiff's First Amended Complaint and any subsequent pleading Plaintiff files in this matter in which Defendants are named as a party within the time provided by the applicable provisions of the Federal Rules of Civil Procedure. *See* 42 U.S.C. § 1997e(g)(2).

5. **ORDERS** Plaintiff, after service of the summons and First Amended Complaint, to serve upon Defendants, or if an appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk, a certificate stating the manner in which a true and correct copy of that document has been served on Defendants or Defendants' counsel, and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2.

**IT IS SO ORDERED**.

Dated: 10/29/2026

Cynthia Bashant

Hon. Cynthia Bashant, Chief Judge
United States District Court